## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2014

(Argued:  March 3, 2015      Decided: March 24, 2015)

Docket No. 14-1809-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

- v. -

CHRISTINE WRIGHT-DARRISAW,

*Defendant-Appellant.*

_____

Before:

CALABRESI, HALL, AND CARNEY, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *J.*) convicting appellant of violating 18 U.S.C. § 871(a) for threatening to kill the President of the United States; sentencing the defendant without applying a four-level decrease in the offense level because the threat was found to involve deliberation; applying a three-level increase to the offense level because appellant was found to have been motivated by the victim's status as a government official; and imposing a sentence of 33 months' imprisonment. Because the Supreme Court's decision in *United States v. Elonis*, 730 F.3d 321 (3d Cir. 2013), *cert. granted*, 134 S. Ct. 2819 (2014), may bear directly on our analysis of whether appellant's communication constituted a "true threat" in violation of 18 U.S.C. § 871(a), we defer consideration of appellant's challenge to the sufficiency of the evidence until the Supreme Court issues its decision.  So that the district court may reconsider the sentence imposed before the appellant has served the remaining balance, however, we remand this case for further consideration of the sentence in light of our holding that the "deliberation" to be considered under Section 2A6.1(b)(6) of the United States Sentencing Guidelines is deliberation related to the communication of the threat itself.  The District Court should consider the defendant's deliberation with respect to her course of conduct leading up to her communication of the threat only if it is closely tied to the communication of the threat.

We defer consideration of the sufficiency of the evidence, and we vacate the sentence and remand for further sentencing proceedings consistent with this opinion.

REMANDED.

MONICA J. RICHARDS,
    Assistant United States Attorney, for William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee United States of America.*

JEFFREY L. CICCONE,
    Assistant Federal Public Defender (Jay S. Ovsiovitch, *Of Counsel*, on the brief), Federal Public Defender's Office for the Western District of New York, Rochester, NY, *for Defendant-Appellant Christine Wright-Darrisaw.*

HALL, *Circuit Judge*:

Defendant-Appellant Christine Wright-Darrisaw appeals a judgment of conviction for threatening to kill the President of the United States in violation of 18 U.S.C. § 871(a). Wright-Darrisaw also appeals the procedural reasonableness of her sentence, challenging: (1) the district court's decision not to apply a four-level decrease in the offense level pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2A6.1(b)(6) based on the court's determination that the threat involved deliberation; (2) a three-level increase in her offense level pursuant U.S.S.G. § 3A1.2(a) because Wright-Darrisaw was motivated by the victim's status as a government official; and (3) the district court's calculation of the sentence imposed on her conviction for making a false statement in violation of 18 U.S.C. § 1001(a)(2).[1]

---

[1] Wright-Darrisaw does not challenge her conviction for making a false statement in violation of 18 U.S.C. § 1001(a)(2).

As to Wright-Darrisaw's challenge to her conviction for violating 18 U.S.C. § 871(a), we defer consideration of whether Wright-Darrisaw's threat to kill the President constituted a "true threat" cognizable under 18 U.S.C. § 871(a) until after the Supreme Court has issued its decision in *United States v. Elonis*, 730 F.3d 321 (3d Cir. 2013), *cert. granted*, 134 S. Ct. 2819 (2014). Regarding the procedural reasonableness of Wright-Darrisaw's sentence, for the reasons that follow we remand to the district court for further consideration of whether Wright-Darrisaw's threat involved the sort of deliberation contemplated under U.S.S.G. § 2A6.1(b)(6).

## I.    BACKGROUND

Following a jury trial, Wright-Darrisaw was found guilty of threatening the President of the United States in violation of 18 U.S.C. § 871(a) and of making a false statement in violation of 18 U.S.C. § 1001(a)(2). The district court imposed a sentence of 33 months' imprisonment, rejecting Wright-Darrisaw's request for a four-level decrease in the offense level under U.S.S.G. § 2A6.1(b)(6) because, in the court's view, the threat involved deliberation. For the purposes of this opinion we address the limited issue of whether the district court committed procedural error when it rejected Wright-Darrisaw's request for the four-level decrease.

### A. Convictions

On February 24, 2012, Wright-Darrisaw called the White House Comments Line and after two and a half minutes of communication characterized generally as "foul," "incoherent," and "irrational," stated "I'm going to f**k and kill Obama." Christiane Richardin, a volunteer telephone operator, transferred Wright-Darrisaw to the Secret Service

and completed an incident report. Richardin reported that Wright-Darrisaw was "angry," "excited," and "loud." The call was not recorded. The Secret Service subpoenaed phone records and later determined that Wright-Darrisaw had called the White House Comments Line several times prior to the call at issue. The Secret Service also determined that Wright-Darrisaw was a resident of Rochester, New York, and subsequently transferred investigation of the case to the Secret Service's Rochester Office.

During the investigation, Wright-Darrisaw admitted to calling the White House Comments Line to voice her displeasure with child custody laws, but she denied making any threats. Wright-Darrisaw was arrested on March 9, 2012. Following a three-day trial, a jury found her guilty of threatening President Obama in violation of 18 U.S.C. § 871(a) and of making a false statement to the Secret Service in violation of 18 U.S.C. § 1001(a)(2).

### B. *Sentencing*

The Presentence Investigation Report ("PSR") recommended a combined and adjusted total offense level of 17. Wright-Darrisaw had a criminal history category of II, which, when combined with her total offense level, resulted in a Guidelines sentencing range of 27 to 33 months.

With respect to the Guidelines calculation, Wright-Darrisaw urged the district court: (1) to adopt a four-level decrease in the offense level pursuant to U.S.S.G. § 2A6.1(b)(6) because the threat did not involve deliberation; (2) to decline to apply a three-level increase in the offense level pursuant to U.S.S.G. § 3A1.2(a) pertaining to a threat when the victim is a government official; and (3) to adopt an unspecified decrease in the offense level to account for Wright-Darrisaw's history of mental health issues.

The district court denied Wright-Darrisaw's request for the § 2A6.1(b)(6) four-level decrease in the offense level, reasoning in significant part that the very act of calling the White House Comments Line involved deliberation. The district court explained:

> Examining what happened here, this was not spontaneous. The ultimate verbalization of the threat may have been spontaneous, but there was some deliberation here. There's deliberation by contacting the White House in the first place.
>
> \* \* \*
>
> Ms. Wright-Darrisaw indicated she did that only after she had a negative experience in Family Court; was upset regarding the custody of her children . . . and made a deliberate attempt to contact the White House to seek aid from the President specifically.

As to the three-level increase in the offense level under § 3A1.2(a), the district court was not moved by Wright-Darrisaw's objection and held that her threat was directed toward President Obama based upon his status as the President of the United States.

When considering Wright-Darrisaw's mental health issues, the district court found Wright-Darrisaw's history of threatening conduct relevant to its denial of the request for a downward departure:

> [Your] conduct over the years has been scary . . . it includes menacing; possession of a box cutter; possession of a knife; one which was hidden in a dress on one occasion; a threat to Monroe Community College to blow up a bomb at that location.
>
> \* \* \*
>
> Threats against President Bush and the sheriff. Threats against a neighbor with a knife. A situation where windows of a car were smashed out. Threats against other officials. Threats to kill neighbors. A threat to slit the throat of a clerk at Walmart. Threats to shoot a cousin. And at one point there was activity where you apparently jumped out of a moving car, and also threatened to kill and shoot some neighbors.

Ultimately, after considering the seriousness of the offense, Wright-Darrisaw's history and character, and the need for deterrence, the district court imposed a sentence of 33 months' imprisonment. The court explained:

> To threaten the President of the United States puts a lot of actions in motion, and it should. Because we've seen a history [of] this over our lifetime where a President being shot or killed has a tremendous effect on our society.
>
> * * *
>
> And so it's a serious thing. The message has to go out there loud and clear: You can't threaten the President of the United States and get away with it.

Wright-Darrisaw is currently serving her sentence.

## II.    DISCUSSION

We write briefly to clarify the factors to be considered when determining whether a threat has involved the kind of deliberation that precludes a sentencing court from applying the four-level decrease provided by U.S.S.G. § 2A6.1(b)(6) to the offense level calculation applicable to Wright-Darrisaw's conviction for violation of 18 U.S.C. § 871(a).

In pertinent part, 18 U.S.C. § 871(a) provides that whoever "knowingly and willfully . . . [makes] any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States . . . shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 871(a).  "Whether words used are a true threat is generally best left to the triers of fact." *United States v. Amor*, 24 F.3d 432, 436 (2d Cir. 1994) (citing *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982)).  When imposing a sentence on a defendant convicted of violating § 871(a), if the court finds "the offense involved a

single instance evidencing little or no deliberation," then it should decrease the offense level by four. U.S.S.G. § 2A6.1(b)(6).

Wright-Darrisaw argues that the district court committed procedural error by confusing the deliberate call to the White House with the spontaneous threat made at the end of that call. She also argues that the threat was the product of "a single impulse, or . . . a single thoughtless response to a particular event." *United States v. Humphreys*, 352 F.3d 1175, 1177 (8th Cir. 2003) (quoting *United States v. Sanders*, 41 F.3d 480, 484 (9th Cir. 1994)). The government responds that Wright-Darrisaw's history of threatening behavior, her conscious decision to call the White House, the fact that the threat came at the end of two minutes and thirty seconds of communication, and her deceptive conduct after the call, all support a determination that the threat involved deliberation.

The question before us is whether the district court erred when it determined that Wright-Darrisaw engaged in sufficient deliberation in connection with making her threat against the President to preclude eligibility for the four-level decrease in her offense level. In our view, the explanation provided by the district court suggests that the court may have been too sweeping in its consideration of what constitutes deliberation cognizable under U.S.S.G. § 2A6.1(b)(6). We will therefore vacate the sentence imposed and forthwith remand this case so that the district court may reanalyze in the first instance, consistent with the holding of this opinion, the quantum of deliberation involved in Wright-Darrisaw's communication of her threat.

In considering the applicability of the four-level reduction, we find it instructive to examine case law from our sister circuits addressing the applicability of § 2A6.1(b)(6)and its

predecessor. In *United States v. Russell*, 322 F. App'x 920, 921 (11th Cir. 2009), for example, the Eleventh Circuit affirmed a sentence denying the four-level reduction where a defendant was arrested after calling 911 and telling the dispatcher that he was "thinking about killing the President," and that he "really mean[t] it." Subsequent to the arrest, defendant also reiterated the threat to both the police and the Secret Service. *Id.* at 922. Facts relevant to the court's determination that defendant's threat involved deliberation sufficient to preclude application of § 2A6.1(b)(5) [2] included that defendant stated that he was "on his way to kill the president" and that he "had walked from Alabama [to Georgia] to do so." *Id.* at 924. The fact that defendant had actually walked from Alabama to Georgia, coupled with defendant's detailed explanation of his motivations underlying the threat, led the court of appeals on review for clear error to affirm the district court's finding of deliberation. *Id.* at 925.

In *United States v. Humphreys*, 352 F.3d 1175, 1176 (8th Cir. 2003), the Eighth Circuit affirmed a sentence where a defendant made several threats that "he or one of his followers would douse President Bush with a flammable material and throw a match on him," determining that the repeated threats were not limited to a "single instance" as required to support a reduction. In so holding, the Eighth Circuit observed that the reduction applies when the threat is the product of "a single impulse, or [is] a single thoughtless response to a particular event." *Id.* at 1177 (quoting *United States v. Sanders*, 41 F.3d 480, 484 (9th Cir. 1994)). Facts relevant to the Eighth Circuit's conclusion included that defendant communicated his threat "to different people on different occasions,

_____

[2] Since the 2009 amendments to the Guidelines, the four-level decrease referenced here is now found at § 2A6.1(b)(6).

specifically, in [an internet] chat room, by fax to the White House, and in person to three individuals at different times." *Id.* The fact that the threat was reiterated on several occasions and was not simply the product of a "single impulse," supported a finding that the defendant was not eligible for a four-level reduction under § 2A6.1(b)(5). *Id.*

In *United States v. Horton*, 98 F.3d 313, 320 (7th Cir. 1996), the Seventh Circuit vacated a sentence and remanded for further analysis of whether there had been deliberation when a defendant had made a bomb threat against a federal building one day after the Oklahoma City bombing. The circuit court held that the district court inadequately explained its decision to infer deliberation with respect to the threat based on the timing of the threat, defendant's presence at the building, and the heightened security that had been put in place because of the Oklahoma City bombing, and without explaining its choice to "dismiss without comment" certain other evidence regarding the defendant's pre-threat conduct or focusing on the nature of his offense conduct. *Id.* at 320.

Even in the context of a written and mailed threat—circumstances from which one might infer a certain level of deliberation—the Ninth Circuit has commented that, "the mere act of mailing a letter does not, in and of itself, necessarily require deliberation," *Sanders*, 41 F.3d at 485 (finding deliberation nevertheless where "the circumstances of the letters showed some planning and a clear intent to harass the target groups.").

Examining the language of § 2A6.1(b)(6), and the dispositions in these cases, we note two factors that courts have considered in deciding whether to apply the four-level reduction: (1) whether, and under what circumstances, the threat itself has been repeated and (2) whether there is evidence of planning or some effort to carry out the threat. It is

undisputed that the particular threat here was not repeated. The issue is therefore whether there is sufficient evidence of planning or some effort to carry out the threat.

We agree with the Seventh Circuit that the presence of coincidental factors (such as heightened security unrelated in any way to the threat) are not properly considered when determining whether there has been deliberation. Further, we find persuasive the Eighth Circuit's observation that the reduction offered by § 2A6.1(b)(6) should be available to a defendant whose threat is the product of "a single impulse, or [is] a single thoughtless response to a particular event." *Humphreys*, 352 F.3d at 1177. Thus, we hold here that the "deliberation" to be considered under § 2A6.1(b)(6) of the Sentencing Guidelines is deliberation related to the communication of the threat itself. Only if a defendant's course of conduct leading up to and following the time the threat was made is closely tied to the communication of the threat, or if the defendant makes any effort to carry out the threat, may the conduct then provide a basis for inferring deliberation sufficient to reject the four-level reduction.

In this case, while Wright-Darrisaw's decision to *call* the White House Comments Line to complain about a family law matter undoubtedly involved deliberation, the *threat* itself, which was delivered after two and a half minutes of communication categorized by the operator as "incoherent," may not have involved deliberation of the sort to which § 2A6.1(b)(6) refers. While we agree with the district court that "there's deliberation by contacting the White House" and "seek[ing] aid from the President specifically," these facts alone do not necessarily demonstrate that Wright-Darrisaw's threat involved the sort of

deliberation that must be present in order for the district court to decline to decrease the offense level by four levels under § 2A6.1(b)(6) of the Guidelines.

Accordingly, because it appears that the district court may have conflated the deliberation involved in making the phone call to the White House with the deliberation involved in communicating the specific threat against the President, we vacate the sentence and remand for further consideration of whether Wright-Darrisaw is entitled to the four-level decrease in her offense level. If the district court concludes following such further proceedings as it deems necessary that Wright-Darrisaw's threat was made with little or no deliberation, then the court should resentence her accordingly. If, on the other hand, the court concludes that there was deliberation of the sort contemplated by § 2A6.1(b)(6), then the present sentence should be re-imposed.[3] If either party intends to appeal the district court's sentencing decision on remand, it may inform this Court of its position and provide supplemental briefing, which this panel would expect to consider at the time we review the challenge to the sufficiency of the evidence.

We have considered Wright-Darrisaw's remaining challenges to her sentence and find them to be without merit.

## III. CONCLUSION

For the foregoing reasons, we VACATE the sentence and REMAND to the district court for the limited purpose of considering the U.S.S.G. § 2A6.1(b)(6) issue consistent with this opinion. We defer consideration of Wright-Darrisaw's challenge to the sufficiency of

---

[3] In either case, we are confident that the district court is aware that a sentence to a term of incarceration may not be based on Wright-Darrisaw's rehabilitative needs. *See* 18 U.S.C. § 3582(a); *Tapia v. United States*, 131 S. Ct. 2382 (2011).

the evidence supporting her conviction for violation of 18 U.S.C. § 871(a) until such time as

the Supreme Court has issued its decision in *Elonis*.